THOMAS PAGE and JOHN R. SLACK, Administrators &c. of EBENEZER TUCKER, deceased, *v.* CHARLES CARROL TUCKER, ST. GEORGE TUCKER, and others.

A. died intestate, leaving a large personal estate, and leaving several children, and several grandchildren, the children of deceased sons and daughters. One of the deceased sons had, in his lifetime, gone to Paris for his health, where he resided some years; during which time the intestate sent him funds, at different times, in amounts of $500 and $1,000, which, together with an item of interest of $120, paid by him during the son's absence abroad, on a note given by the son, on which the intestate was security, were charged to the son on the intestate's book of accounts; and it was shown in testimony that the intestate declared, that the amount so charged to the son was charged to him as part of the son's share of his estate.

*Held*, that the amount so charged should be taken into the account in fixing the distributive shares, and considered, in the distribution, as part of the share of the children of the said son; he having died before the death of the intestate.

The bill, filed July 10, 1848, states, that Ebenezer Tucker, deceased, died possessed of a very considerable personal estate, and seized and possessed of a very considerable real estate, situate in Burlington county. That he died September 5, 1845, leaving five children and seven grand-children, two of said grand-children being the children of Reuben D. Tucker, a deceased son of said Ebenezer Tucker, deceased; two other of said grand-children being the children of Aaron B. Tucker, another deceased son of said Ebenezer Tucker, deceased; and the three other grand-children being the children of Susan R. Bispham, wife of Joseph Bispham, a deceased daughter of said Ebenezer Tucker, deceased, his only next of kin.

That, on the 23d September, 1845, the complainants obtained letters of administration on the personal estate of said intestate, and possessed themselves &c., to a large amount, and much more than sufficient to pay his debts.

That, having given two months notice &c., they exhibited their account of their administration to the Surrogate of Burlington, who, having first audited &c., reported the same to the Orphans' Court of said county, in the term of February, 1847;

and, no exceptions being made to said report, the said Court allowed the said account ; by which account, (which was not a final, but only partial account, exhibiting the administration of the estate so far as it had come to their hands,) it appears, that there was at that time in their hands, to be distributed to the next of kin, $46,071 14.

That the said Reuben D. Tucker, Aaron B. Tucker, and Susan R. Bispham, children of said Ebenezer Tucker, deceased, died in the lifetime of their father, leaving children as aforesaid.

That the said grand-children are all minors and non-residents of this State ; and that no letters of guardianship have been granted of their persons or estates, in this State.

That, among the assets of said intestate to be administered, and which are not included in the account before mentioned, is a book of accounts against the said Aaron B. Tucker, one of the children of said intestate, consisting, (among others,) of the following items :

| | | |
|---|---|---|
| 1831, Sept. 16. To check, B. U. States, $480 | | |
| " " " Specie, - - $20 | $500 |
| 1833, July 15. To one bill of exchange on Messsrs. Hottingein & Co., Paris, for 2650 frs., from B. U. S., dated July 5, equal to - - | $500 |
| " Oct. 7. To one draft on Hottingein & Co., for 2650 frs., equal to - - - | $500 |
| 1834, June 21. To one bill of exchange from the B. U. States, dated 17th May last, on Hottingein & Co., for 5333 33-100 frs., equal one thousand dollars, - - - - - | $1,000 |
| 1836, July 30. To cash paid Geo. W. Tucker, five years interest on your note to him for $400. I was security. - - - - | $120 |
| " March 24. To one bill of exchange from the B. U. S., on Hottengein & Co., Paris, dated March 17, for 2637 50-100 frs., - - | $500, |

as appears by the book account of said intestate, entered in his own hand-writing.

That the complainants are informed and believe, that the said several sums were paid by the intestate to his son Aaron B. Tucker, in his life-time, by way of advancement; or, by some arrangement or understanding between said father and son it was agreed and understood that the same should be considered as an advancement and as part of the portion to which said son would be entitled out of any surplus &c. for distribution.

That when the said several debts were contracted or advances made by the intestate to the said Aaron, the intestate was a resident of New Jersey, and so continued until his death; and that the said Aaron was not at that time a resident of New Jersey, or at any time afterwards; and that said Aaron afterwards died, intestate, out of New Jersey, about eighteen months before the intestate Ebenezer died.

That the complainants have paid and distributed to all of said next of kin, except the said children of Aaron B. Tucker, their respective shares of said $46,071 14; and are desirous to distribute to the said children of Aaron B. Tucker their share thereof; but, inasmuch as they claim an equal eighth part of the same, without accounting for the said sum of $4,136 94, either as a debt due from their father to the intestate, or as an advancement made by the intestate to their father, in his life-time, and as the other children, &c., have forbidden the complainants to made such distribution as is claimed by said children of the said Aaron, they desire the protection of the decree of this Court.

The bill prays that the parties may interplead; and that the complainants may be directed how to pay, &c.

The answer of St. George Tucker, one of said children of said Aaron, an infant, by his guardian, says, that he does not admit that said book account or claim, if any there be, can be considered as an advancement; but, so far as he has knowledge of the said claim and of the circumstances attending it, he denies that the said several sums mentioned in the said account or claim, or any of them, were paid by the intestate, or received by said Aaron, as an advancement, or that it was agreed, considered or understood &c. (as stated in bill.)    That this defendant has un-

derstood and believes, that a large portion of said account, if any there be, is for money furnished by the intestate to his said son Aaron while the said Aaron was in Europe, whither he had gone for the benefit of his health, and where he remained for several years; and the sums furnished at the times &c. were bestowed for the procurement of necessary apparel &c., and to enable his said son to live respectably &c.; and he submits, that such sums cannot be considered as advancements. That they were merely gratuities or gifts evincing the benevolence of the parent to a child who was suffering from ill health in a foreign land; that they were temporary in their character, and not intended as a portion or advancement.

That, if the complainants insist that such account is evidence of a debt from &c., this defendant insists that such indebtedness of said Aaron, his father, cannot be set off against this defendant's share of &c., or deducted out of the same.

That his father returned from Europe in 1837, and died in 1839, more than six years before the death of said Ebenezer Tucker, who died in 1845. That said Aaron, after his return from Europe, was insolvent and unable to pay his debts, and afterwards obtained a discharge as an insolvent debtor, in the State of Pennsylvania, where he then resided. That the said Aaron, some time afterwards, died, without being possessed of any property, as he understood and believes, and insolvent.

That, if the complainants seek to charge this defendant with the amount claimed as a debt due from his father, the said Aaron, to the said estate, and to charge him as one of the heirs or next of kin or children of the said Aaron, then, he insists, that such claim is barred by the statute of limitations, as more than six years had elapsed since the cause of action accrued against the said Aaron, before the commencement of this suit; and he prays he may have the benefit of the said statute as if he had pleaded the same in bar.

He admits that, during the several years mentioned in the account set up by the complainants, the said Ebenezer Tucker was a resident of New Jersey, and so continued until his death; and that said Aaron was not during said period a resident of New

Jersey, but then and afterwards resided out of New Jersey until his death, which occurred before the death of said Ebenezer Tucker.

Charles Carrol Tucker, the other child of the said Aaron, put in an answer to the same effect.

The answer of the other distributees insists as represented in the bill.

*John Willet* testifies, that, about January 1, 1834, he went to see Ebenezer Tucker, deceased, to pay him money. The said Ebenezer said he was pleased to see him come to pay money at that time, for he was about making up $1,000 to send to France to his son Aaron, who was in Paris at that time with his family, and had written to him for money. Witness asked if Aaron was not wealthy, and expressed surprise that Aaron should send to said Ebenezer for money. Ebenezer Tucker said, Aaron was in limited circumstances, so much so that he had frequently called on him, said Ebenezer Tucker, for assistance prior to that time, and that he had advanced money to him several times before that. He said he had charged against Aaron, on his book, what he had let him have, and that it was to come out of Aaron's share of his estate. He said, "if Aaron has it in my life-time he cannot expect to have it after I am gone; he can't have it but once; it makes little difference to me whether he has it now or after my death; if he can enjoy it now, he might as well have it." Witness heard him speak on the same subject more than once before to the same purport.

*Wm. S. Lippincott* proves the entries in the book of Ebenezer Tucker of the items stated in the bill against Aaron to be in the hand-writing of Ebenezer Tucker. Witness says, he frequently heard Ebenezer Tucker speak of advancing money to his son Aaron. He said he had advanced him money, and that he had charged it in his book, and that he considered and intended it as

a part of Aaron's share of his estate.   Witness heard him speak on the subject a number of times.   Thinks Aaron returned from France in 1837.   While Aaron was in France, witness frequently heard Ebenezer Tucker speak of raising money to send him. At these times he said he intended the money should go as a part of Aaron's share of his estate.

*Isaiah Adams* testifies, that he was a tenant under Ebenezer Tucker for 15 or 16 years, and is familiar with his hand-writing. That all the items in the account set forth in the bill, as found in the books of Ebenezer Tucker, are in the hand-writing of Ebenezer Tucker.   He has frequently heard Ebenezer Tucker speak of raising money to send his son Aaron in France.   He said his son was there in big company, and it would not do to let him starve.   He said the physicians had told his son he must go to France; that if he remained in this country he must die; and that a change of climate might restore his health.   He said that Aaron had no means of his own, and that he must send him money.   He said that if Aaron outlived him he would be entitled to a share of his estate, and that he might as well have a part of it for the purpose of regaining his health, for if Aaron died before him, the money would do him no good, and he might as well have it now as after he, Ebenezer Tucker, was gone; and that if he had it now, he could not expect to have it at another time.   Witness had heard him speak on this subject a great many times.

*William Allen's* testimony is to the same effect.

*A. Browning,* for the complainants, cited *Rev. Stat.* 355, sec. 13; *Toller on Ex'ors,* 374; 5 *Roll's Rep.* 218; 2 *P. W'ms,* 560; 1 *Halst. Ch.* 99; *Rev. Stat.* 94, sec. 8; 6 *Halst. Rep.* 354; 3 *Green's Rep.* 171; *Penn. Rep.* 1010; 16 *Conn. Rep.* 383.

*P. D. Vroom* for the defendants the children of Aaron B.

Tucker, cited *Swinb. on Wills,* 233, 4 ; 4 *Pick. Rep.* 21 ; 3 *Burr.* 390 ; 1 *Watts & Serg.* 390.

THE CHANCELLOR.     The amount advanced to Aaron must be taken into the account in fixing the distributive shares, and considered, in the distribution, as part of the share of his children.

    Order accordingly.